## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Andrew Will Alexander,

              Plaintiff,

      v.

John A. Hedback, individually and as
Bankruptcy Trustee of the Bankruptcy
Estate of G. Yvonne Stephens; Habbo
G. Fokkena, United States Trustee;
Amy Baumhofer; Ann Baumgart;
John Doe; Jane Doe;
Mary Jo A. Jensen-Carter, individually
and as Trustee of the Bankruptcy Estate
of Larry K. Alexander;
City of Saint Paul; Sharon Lubinski, U.S.
Marshal,

              Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-3590 ADM/JSM

_____

Daniel L. M. Kennedy, Esq., Kennedy Law Group PLLC, Minneapolis, MN, on behalf of
Plaintiff.

John A. Hedback, Esq., Hedback Arendt Kohl & Carlson, St. Anthony, MN.

Michael J. Iannacone, III, Esq., and Mary F. Ahrens, Esq., Iannacone Law Office, Lake Elmo,
MN, on behalf of Defendant Mary Jo A. Jensen-Carter.

Judith A. Hanson, Esq., St. Paul City Attorney's Office, St. Paul, MN, on behalf of Defendants
City of Saint Paul, Amy Baumhofer, and Ann Baumgart.

David W. Fuller, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of
Defendants Sharon Lubinski, John Doe, and Jane Doe.

_____

## I. INTRODUCTION

On April 23, 2012, the undersigned United States District Judge heard oral argument on

Defendants Mary Jo A. Jensen-Carter ("Jensen-Carter") and John A. Hedback's ("Hedback")

Motion to Dismiss [Docket No. 27] (the "Trustees' Motion"), Defendant City of Saint Paul's

("St. Paul") Amended Motion to Dismiss and for Summary Judgment [Docket No. 36] (the "St. Paul Defendants' Motion"), and Defendants Sharon Lubinski, U.S. Marshal ("Lubinski"), John Doe, and Jane Doe's (collectively the "Federal Defendants") Motion to Dismiss or, in the Alternative, for Summary Judgment [Docket No. 38] (the "Federal Defendants' Motion").  For the reasons set forth below, the Trustees' Motion is granted, the St. Paul Defendants' Motion is granted, and the Federal Defendants' Motion is granted.

## II.  BACKGROUND[1]

This case is the latest episode in lengthy litigation spanning some fourteen years, involving multiple parties, numerous appeals, but all concerning a single piece of real property known as 875 Laurel Avenue (the "Property"), located in St. Paul, Minnesota.[2]  As the facts have been iterated and reiterated by prior courts, only an abridged version of the historical facts most relevant to the present motions is presented below.

Plaintiff Andrew Will Alexander ("Andrew Alexander") is the son of Larry K. Alexander ("Larry Alexander") and G. Yvonne Stephens ("Stephens").  See Stephens v. Jensen-Carter ("Stephens II"), No. Civ. 01-633, Civ. 05-33, 2005 WL 852446, at *1 (D. Minn. April 11, 2005)

---

[1]  In considering Defendants' Motion to Dismiss, the Court considers the facts alleged in Plaintiff's Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

[2]  E.g., In re G. Yvonne Stephens, Civil No. 11-2661, 2011 WL 4340858 (D. Minn. Sept. 15, 2011); In re Stephens, 425 B.R. 529 (B.A.P. 8th Cir. 2010); Alexander v. Hedback, Civil No. 10-227, 2010 WL 653887 (D. Minn. Feb. 23, 2010); Stephens v. Hedback, 321 Fed. App'x 536 (8th Cir. 2009); Stephens v. Jensen-Carter, Nos. 06-CV-0693, 06-CV-2327, 2007 WL 2885813 (D. Minn. Sept. 27, 2007); Stephens v. Jensen-Carter, No. Civ. 01-633, Civ. 05-33, 2005 WL 852446 (D. Minn. April 11, 2005); In re Alexander, 289 B.R. 711 (B.A.P. 8th Cir. 2003); In re Alexander, 288 B.R. 127 (B.A.P. 8th Cir. 2003); In re Stephens, 276 B.R. 610 (B.A.P. 8th Cir. 2002); In re Alexander, 270 B.R. 281 (B.A.P. 8th Cir. 2001); In re Alexander, 236 F.3d 431 (8th Cir. 2001); In re Alexander, 239 B.R. 911 (8th Cir. 1999); In re Alexander, 236 B.R. 679 (B.A.P. 8th Cir. 1999).

(noting Stephens claimed Larry Alexander conveyed the Property to her and their minor child in March 1998); Dec. 12, 2011 Aff. of Andrew Will Alexander, Ex. A ("1998 Quitclaim Deed") (showing the Property was purportedly conveyed to Stephens and Andrew Alexander).

Larry Alexander acquired the Property in 1977. Stephens II, 2005 WL 852446, at *1. On June 11, 1998, Larry Alexander moved out of the Property and filed for divorce from Stephens. Id. On June 18, 1998, Larry Alexander filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Voluntary Petition [Bankruptcy Case 98-33694[3] Docket No. 1]. In his bankruptcy petition, Larry Alexander listed his home address as one on Lexington Parkway in St. Paul, Minnesota, not the Property. Id. On September 1, 1998, Larry Alexander filed an amended Schedule C in his bankruptcy case claiming an exemption for the Property. Am. Schedule C [Bankruptcy Case 98-33694 Docket No. 30]. On September 3, 1998, the trustee in Larry Alexander's Chapter 13 bankruptcy case, then J.J. Mickelson, objected to the exemption, arguing no homestead exemption could be claimed because Larry Alexander did not live at the Property but rather on Lexington Parkway, and moved to convert the case to Chapter 7. Notice & Objection to Confirmation of Plan & Mot. to Convert [Bankruptcy Case 98-33694 Docket No. 35] ¶¶ 5, 6, 12. By Order dated December 3, 1998, the trustee's objection to claiming an exemption in the Property was sustained and the case was converted to one under Chapter 7.

---

[3] The Court relies on numerous court records from the many distinct cases related to the Property. For ease, the case number is included before the phrase "Docket No." when referring to the docket in a case other than this case. All docket numbers refer to cases in the U.S. District Court for the District of Minnesota, or the U.S. Bankruptcy Court for the District of Minnesota. Hence, a reference to "Bankruptcy Case 98-33694 Docket No." refers the docket in case number 98-33694 in the U.S. Bankruptcy Court for the District of Minnesota and a reference to "Civil Case 01-1087 Docket No." refers to the docket in civil case number 01-1087 in the U.S. District Court for the District of Minnesota. References to merely "Docket No." refer to the docket in this case, Civil No. 11-3590.

Dec. 3, 1998 Order [Bankruptcy Case 98-33694 Docket No. 56] ¶¶ 1, 4.

On December 4, 1998, following the conversion of the case to Chapter 7, Defendant Jensen-Carter was appointed as trustee of Larry Alexander's bankruptcy estate. Appointment of Interim Trustee & Approval of Bond [Bankruptcy Case 98-33694 Docket No. 132[4]]. After the Chapter 7 conversion, Larry Alexander again attempted to claim the Property as exempt, arguing that he resided there at the date of conversion, Jensen-Carter objected, and by Order dated June 30, 1999, the objection was sustained by the bankruptcy court. June 30, 1999 Order [Bankruptcy Case 98-33694 Docket No. 94] at 5–8. The bankruptcy court's decision was subsequently affirmed. In re Alexander, 239 B.R. 911, 915–16 (B.A.P. 8th Cir. 1999); In re Alexander, 236 F.3d 431, 432–33 (8th Cir. 2001).

Several more attempts were made to litigate the exemption of the Property, including motions by Stephens on behalf of herself and Andrew Alexander. E.g., Mot. of Debtor Larry Kenneth Alexander for Relief Pursuant to Fed. R. Civ. P. 60(b) [Bankruptcy Case 98-33694 Docket No. 115]; Mot. to Sustain Exemption of 875 Laurel, St. Paul, Minn. [Bankruptcy Case 98-33694 Docket No. 154]. But, they too proved unsuccessful. E.g., April 17, 2001 Order [Bankruptcy Case 98-33694 Docket No. 131]; Sept. 12, 2002 Order [Bankruptcy Case 98-33694 Docket No. 170].

In the same time period as Larry Alexander's bankruptcy proceedings, Larry Alexander and Stephens were involved in their dissolution proceeding. See Stephens v. Jensen-Carter, No. Civ. 01-633, Civ. 05-33, 2005 WL 852446, at *1. During the dissolution process, Stephens

---

[4] Inexplicably, the docket numbering in Larry Alexander's bankruptcy case is out of sequence and Docket No. 132 appears between Nos. 58 and 59.

4

never claimed an ownership interest in the Property.  See id. at *2.

During the pendency of both Larry Alexander's bankruptcy case, and the dissolution proceeding, Stephens filed for Chapter 7 bankruptcy on August 17, 1998.  Voluntary Petition [Bankruptcy Case 98-34858 Docket No. 1].  She listed the Property as her residence but did not claim a homestead exemption, instead she stated she paid rent to Larry Alexander for the Property.  Id.; Schedules [Bankruptcy Case 98-34858 Docket No. 7].  On September 27, 1998, Defendant Hedback was appointed as trustee of Stephens' bankruptcy estate.  Appointment of Succsesor Trustee & Approval of Bond  [Bankruptcy Case 98-34858 Docket No. 12].  On January 24, 2000, Stephens' bankruptcy case was closed.  Jan. 24, 2000 Order  [Bankruptcy Case 98-34858 Docket No. 29].

In April 2001, Stephens commenced an action in federal court in Minnesota against Jensen-Carter, Civil No. 01-633 PAM/RLE, on behalf of herself and on behalf of Andrew Alexander, seeking a declaratory judgment of their ownership interests in the Property and alleging violations of bankruptcy laws and the U.S. Constitution.  While that federal case was pending, Jensen-Carter commenced an eviction action against Larry Alexander and Stephens in state court in Ramsey County, Minnesota, and Stephens removed the case to federal court in Minnesota, Civil No. 01-1087 RHK/JMM.  By Order dated October 24, 2001, the eviction action was remanded back to Minnesota state court.  Oct. 24, 2001 Order [Civil Case 01-1087 Docket No. 35].  On September 19, 2001, the Magistrate Judge in the first federal action stayed several of the claims pending resolution of the eviction action.  Sept. 19, 2001 Order [Civil Case 01-633 Docket No. 62].  The Magistrate Judge also issued a Report and Recommendation [Civil Case 01-633 Docket No. 63] recommending the remaining claims be dismissed, which was adopted by

Order dated October 24, 2001 [Civil Case 01-633 Docket No. 74].

On August 31, 2001, Stephens filed a schedule C in her closed Chapter 7 case purporting to claim a homestead exemption in the Property.  In re Stephens, 276 B.R. 610, 612 (B.A.P. 8th Cir. 2002).  Stephens then filed a motion in her closed Chapter 7 case seeking to enjoin Jensen-Carter, as trustee of Larry Alexander's bankruptcy estate, from taking possession of and selling the Property.  Id.  Stephens' motion was denied by the bankruptcy court and that decision was affirmed on appeal.  Id. at 614.

Sometime in early 2002, Stephens asserted for the first time that Larry Alexander had conveyed the Property to her and Andrew Alexander as joint tenants through an unrecorded quitclaim deed dated March 15, 1998.  Dec. 12, 2011 Aff. of Andrew Will Alexander [Docket No. 4] ("Andrew Alexander Aff.") Ex. F ("Jan. 27, 2004 Ramsey County District Court Order") at 5.  On June 26, 2003, the March 15, 1998 quitclaim deed was recorded in Ramsey County. Andrew Alexander Aff. Ex. A.

By Order dated January 27, 2004, the eviction action in Minnesota state court was resolved in favor of Stephens.  Jan. 27, 2004 Ramsey County District Court Order at 1, 8–9.  The Minnesota state court held that Stephens was entitled to immediate possession of the Property under Minnesota law because the Property became her homestead when she married Larry Alexander and began occupying the property.  Id. at 8.  On May 3, 2004, final judgment was entered in the eviction action.  Andrew Alexander Aff. Ex. G.

In July 2004, Jensen-Carter applied to reopen Stephens' bankruptcy case, and it was reopened by Order dated July 2, 2004 [Bankruptcy Case 98-34858 Docket No. 52].  On December 16, 2004, Jensen-Carter filed an adversarial Complaint against Hedback, Larry

6

Alexander, and Stephens, seeking to avoid the transfer of the property as a fraudulent conveyance under 11 U.S.C. § 549.  See generally Compl. [Bankruptcy Case 04-3468 Docket No. 1].  With the stay in Civil Case No. 01-633 lifted, all cases involving the Property were referred to the bankruptcy court and consolidated.  April 11, 2005 Order [Civil Case No. 01-633 Docket No. 85] at 17–18.

With all litigation in a single forum, the bankruptcy court held that a genuine issue of material fact existed regarding whether the statute of limitations had run under 11 U.S.C. § 549 for an avoidance of the conveyance of the Property through the quitclaim deed (assuming the veracity of the deed could be established) and deferred that issue for a future trial.  Jan. 5, 2006 Order [Bankruptcy Case 04-3468 Docket No. 26] at 8.  The bankruptcy court did state, however, that whatever interest was created by the 1998 deed, the Property was subject to sale, and that "the child's [Andrew Alexander's] interest, if the deed is not avoided, is as a tenant in common, and no protected possessory interest would be implicated by sale of the property."  Id. at 8–9.

To proceed with that sale, on August 31, 2011, the bankruptcy court ordered Stephens and Larry Alexander to vacate the Property by 8:00 a.m. on September 15, 2011.  Aug. 31, 2011 Order [Bankruptcy Case 04-3468 Docket No. 71] ¶ 2.  That order (the "August 31, 2011 Bankruptcy Order") further stated that "[a]ny property of Larry Kenneth Alexander or G. Yvonne Stephens remaining [at the Property] on or after 7:59 a.m. September 15, 2011 shall be deemed to be abandoned property and may be removed or disposed of by Mary Jo A. Jensen-Carter and/or John A. Hedback."  Id.  The Order directed the U.S. Marshals to accompany the Trustees to the Property and to "physically remove, by force if necessary, Larry Kenneth Alexander, G. Yvonne Stephens and any others occupying [the Property]" if the Property was

7

not vacated by 8:00 a.m. on September 15, 2011. Id. ¶ 4. Larry Alexander and Stephens were

further ordered not to re-enter the property, personally or through any other person. Id. ¶ 5. A

judgment consistent with the August 31, 2011 Bankruptcy Order was entered the same day. Am.

Judgment [Bankruptcy Case 04-3468 Docket No. 73].

On September 15, 2011, Plaintiff Andrew Alexander was living at the Property. Am.

Compl. ¶ 13. At about 8:30 a.m., Andrew Alexander and his grandmother were present at the

Property when approximately six Deputy U.S. Marshals came to the door and commanded him

to leave the house. Am. Compl. ¶ 22. Andrew Alexander asked to see a court order requiring

him to vacate the house and none was provided to him. Am. Compl. ¶ 22. The Deputy U.S.

Marshals were accompanied by approximately six St. Paul Police Department Officers, who

stood on the porch of the house. Am Compl. ¶ 23. Andrew Alexander and his grandmother

complied with the Deputy U.S. Marshals and exited the house to the porch. Am. Comp. ¶¶

24–25. While on the porch, a St. Paul Police Officer, later identified as Defendant Amy

Baumhofer ("Baumhofer"), conducted a pat down search of Andrew Alexander. Am. Compl. ¶

24; see Aff. of Officer Amy Baumhofer [Docket No. 29] ¶ 2 (admitting frisking Andrew

Alexander). Andrew Alexander then asked to be allowed back in the house to retrieve personal

property but was refused by a Deputy U.S. Marshal. Am. Compl. ¶ 28. Around October or

November 2011, Andrew Alexander's personal property within the Property was thrown away or

was otherwise disposed. Am. Compl. ¶ 34. This litigation ensued, and the present motions

followed.

CASE 0:11-cv-03590-ADM-JSM   Document 49   Filed 06/05/12   Page 9 of 30

# III. DISCUSSION

## A.    Standard of Review

The Federal Defendants and the St. Paul Defendants (the City of St. Paul, Baumhofer, and Baumgart are collectively the "St. Paul Defendants") move to dismiss or, in the alternative, for summary judgment. The Trustees' Motion is to dismiss only. Under Rule 12(d) of the Federal Rules of Civil Procedure, courts may convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment if the court considers matters outside the pleadings and all parties are given a reasonable opportunity to present pertinent material. Fed. R. Civ. P. 12(d). As a general rule, summary judgment under Rule 56 is proper only after the nonmovant has had adequate time for discovery. Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 530 (8th Cir. 1999) (quotation omitted). Discovery, however, is not necessary in every situation, such as when a complaint is facially time-barred or the nonmovant merely seeks to explore for a constitutional violation. Id. (citations omitted). Here, to the extent arguments are made concerning matters outside the pleadings that are not public records, considering those arguments would deprive Andrew Alexander of adequate discovery. Therefore, the Court will consider the motions under Rule 12(b)(6)[5] and consider the allegations of the Amended Complaint and matters of public record only.

---

[5] The Federal Defendants motion is also made under Rule 12(b)(1) as it is directed to claims within the purview of the Federal Tort Claims Act ("FTCA"), discussed below. A motion to dismiss under Rule 12(b)(1) may challenge the complaint either on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The Court need not resolve any factual disputes with respect to the FTCA defenses raised by the Federal Defendants. Therefore, the Court will consider the face of the Amended Complaint, and the same standards apply as would apply to a 12(b)(6) motion. See Osborn, 918 F.2d at 729 n.6.

Rule 12(b)(6) provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering such a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

Generally, only the facts alleged in the Complaint and materials attached to the Complaint as exhibits may be considered in ruling on a 12(b)(6) motion.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However, materials that are part of the public record, and in some instances materials that do not contradict the complaint, may be considered.  State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999).  Materials that are "necessarily embraced by the pleadings" may also be considered.  Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012).

Under Rule 8(a), pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  "But where the well-pleaded facts do not permit

10

the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.      § 1983 Claims against Trustees and Federal Defendants**

In his Amended Complaint, Andrew Alexander asserts a claim for a "civil rights violation" against all Defendants.  Subsequent paragraphs suggest that he is asserting a claim under 42 U.S.C. § 1983.  Am. Compl. ¶ 39.  This reading of the Complaint is bolstered by Andrew Alexander's seeking attorney's fees under 42 U.S.C. § 1988(b), Am. Compl. ¶ 42,[6] which allows fee recovery for a plaintiff prevailing under § 1983.  Furthermore, on February 1, 2012, in his response to the Trustees' (Hedback and Jensen-Carter are collectively the "Trustees")[7] argument that they did not act under the color of state law, Andrew Alexander urged that, in fact, they had so acted because "their actions against Plaintiff were not supported by any federal law or federal order."  Pl's. Response to John A. Hedback & Mary Jo Ann Jensen-Carter's Mot. to Dismiss [Docket No. 33] 5.  However, on April 2, 2012, in his response to the Federal Defendants argument that sovereign immunity barred his claims against them, for the first time Andrew Alexander argued he was seeking to recover for constitutional torts through a

---

[6] The Amended Complaint erroneously identifies the statute as 42 U.S.C. § 1986(b), which does not exist.

[7] Andrew Alexander also listed former U.S. Trustee Habbo G. Fokkena ("Fokkena") as a defendant.  The Federal Defendants have represented that Fokkena has not yet been served in this action.  Mem. in Supp. of Fed. Defs.' Mot. to Dismiss or, in the alternative, for Summ. J. [Docket No. 40] 1 n.1.  Given the amount of time since this action was commenced, ordinarily the Court would require Andrew Alexander to show good cause for failing to effect service of process before dismissing the claims.  See Fed. R. Civ. P. 4(m).  However, after reviewing the claims, the Court finds that the grounds for dismissal for the Trustees apply with equal force to Fokkena, those claims are dismissed on the same grounds as the Trustees.

<u>Bivens</u> claim.

Parties cannot raise new causes of action in their briefing of issues. <u>See</u> <u>Haggins v. City of St. Paul</u>, Civil No. 09-537, 2010 WL 1380134, at *13 (D. Minn. Mar. 1, 2010) (declining to consider claims not raised in pleadings); <u>Butvin v. DoubleClick, Inc.</u>, No. 99 CIV. 4727, 2000 WL 827673, at *13 (S.D.N.Y. June 26, 2000) ("A party is not entitled to amend his complaint through his memoranda.") (citations omitted).  Andrew Alexander has amended his Complaint once already, has not sought to do so again, and the Court will not consider a belated <u>Bivens</u> claim.  Indeed, much of the reason the initial litigation concerning the Property has become so protracted is due to the continually evolving theories of ownership asserted by Larry Alexander, Andrew Alexander, and Stephens.  No such gamesmanship will be allowed here.  In the Amended Complaint, Andrew Alexander brought § 1983 claims against all Defendants, including the Federal Defendants.  The § 1983 claims against the Trustees and Federal Defendants will now be considered.

Section 1983 is a Reconstruction-era statute enacted by Congress for the purpose of "interpos[ing] the federal courts between the States and the people, . . . to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial."  <u>Mitchum v. Foster</u>, 407 U.S. 225, 242 (1972) (internal quotations omitted, citation omitted).  The essential elements of a claim under 42 U.S.C. § 1983 are (1) whether the conduct complained of was committed by a person acting *under the color of state law* and (2) whether that conduct deprived a person of rights, privileges, or immunities secured

by the Constitution or laws of the United States.[8]  DuBose v. Kelly, 187 F.3d 999, 1002 (8th Cir.

1999) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981)) (emphasis added).  Typically, then, a

§ 1983 claim cannot be brought against federal officials because they act under color of federal

law.  Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1104 (D.C. Cir. 2005);  See Savage v.

United States, 450 F.2d 449, 451 (8th Cir. 1971).  Likewise, purely private conduct is excluded

from the reach of § 1983, no matter how discriminatory or wrongful.  Am. Mfgs. Mut. Ins. Co. v.

Sullivan, 526 U.S. 40, 50 (1999) (citations omitted).

However, a § 1983 claim is actionable against federal officials or private actors if they

act under the color of state law.  "When the violation is the joint product of the exercise of a

State power and of a non-State power then the test under the Fourteenth Amendment and § 1983

is whether the state or its officials played a 'significant' role in the result."  Kletschka v. Driver,

411 F.2d 436, 449 (2d Cir. 1969) (citing Burton v. Wilmington Parking Authority, 365 U.S. 715,

722 (1961)).  "To transform a federal official into a state actor, the [plaintiff] must show that

there is a 'symbiotic relationship' between the [federal defendants] and the state such that the

challenged action can 'fairly be attributed to the state.'"  Cabrera v. Martin, 973 F.2d 735,

742–43 (9th Cir. 1992) (quotation and citations omitted).

The facts of two cases analyzing joint action between federal and state officials is

illustrative of when the action of federal officials is fairly attributed to the state.  In Ibrahim v.

Dept. of Homeland Security, Ibrahim, a Malaysian citizen studying at Stanford University, was

---

[8] As a threshold matter, because § 1983 requires a violation of the U.S. Constitution or laws of the United States, to the extent that Andrew Alexander's § 1983 claims are based on the Minnesota Constitution or Minn. Stat. § 626.21, see Am. Compl. ¶¶ 37–38, 41, they are dismissed with prejudice as to all Defendants.

refused boarding onto a plane traveling from San Francisco to Malaysia because her name was on the federal government's "No-Fly List."  538 F.3d 1250, 1253 (9th Cir. 2008).  An airline employee summoned the San Francisco police, and when the police arrived they contacted a branch of the Department of Homeland Security and were told to prevent Ibrahim from flying and to detain her for further questioning.  Id.  Ibrahim was handcuffed and taken to a police station, where she was later released after questioning from the FBI.  Id.  The Ibrahim court ruled no § 1983 claim was actionable against the federal defendants or airline and its employee because they did not act under the color of state law.  Id. at 1257–58.  In so ruling, the Ibrahim court rejected the notion that federal officials can be liable under § 1983 whenever they recruit local police to help enforce federal law, but rather may only be liable when a sufficiently close nexus exists between a state and the challenged action of federal officials.  Id. at 1257.

In contrast, in Brown v. Stewart, a Pittsburgh police officer and several Deputy U.S. Marshals entered an apartment belonging to a William Brown in order to execute an arrest warrant for a Billy Brown.  910 F. Supp. 1064, 1066 (W.D. Pa. 1996).  In a case of mistaken identity, despite possessing a photograph of Billy Brown, the officers arrested William Brown and, without checking his fingerprints against those of Billy Brown, held him in jail for nearly two months.  Id. at 1066–67.  The Brown court denied the federal officials motion to dismiss or for summary judgment, ruling the acts of the federal officials could be fairly attributed to the State of Pennsylvania because they were executing a state warrant, had the "active and immediate participation" of local police, and they delivered William Brown to state custody where he was detained.  Id. at 1069.

Here, the actions of the Federal Defendants and Trustee cannot be fairly attributed to the State of Minnesota (or any other state).  Unlike Brown, where federal officials aided state official in executing a state warrant; here, the Trustees and Federal Defendants were enforcing a federal order with assistance from local law enforcement officers.  Furthermore, the allegations of the Amended Complaint make evident that state officers played an insignificant role in taking possession of the Property.  Federal officials first approached the house.  Am. Compl. ¶ 22. Federal, not state, officers ordered Andrew Alexander out of the house.  Am. Compl. ¶ 22.  The allegations state the St. Paul Police officers merely "accompanied" the federal officials.  Am. Compl. ¶ 23.  The execution of the bankruptcy order was not a joint venture of federal officials and local police.  Rather, state officials were at the Property at the behest of the Trustees.  Am. Compl. ¶ 20.  Accepting the allegations in the Amended Complaint as true, this case is much more like Ibrahim than Brown.  All allegations are that St. Paul police merely assisted as the Trustees and Federal Defendants acted under the color of federal law.  Therefore, the actions of the Federal Defendants and Trustees are not fairly attributable to the state, and Andrew Alexander's § 1983 claims against the Trustees and Federal Defendants are dismissed.

**C.     Section 1983 Claims Against St. Paul Defendants**

Andrew Alexander also asserts § 1983 claims against the City of St. Paul and St. Paul Police Officers Baumgart and Baumhofer.  Andrew Alexander offers several theories of liability. He alleges the St. Paul Defendants deprived him of the Property without due process of law by assisting the Federal Defendants and Trustees gain possession of the Property.  He further alleges the St. Paul Defendants deprived him of his personal property without due process of law, the St. Paul Defendants conducted an unreasonable search of the Property, and a St. Paul

police officer conducted an unconstitutional search of his person.  Finally, he asserts a

conspiracy[9] claim based on deprivation of civil rights.  Assuming without deciding that the St.

Paul Police officers were acting under the color of state law here, each theory is addressed in

turn below.

### 1. Relevant Law

"Public servants may be sued under section 1983 in either their official capacity, their

individual capacity, or both."  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir.

1999).  To bring a claim against an official in his or her individual capacity, a plaintiff must

expressly and unambiguously state so in the pleadings, or it will be presumed that the claim is

brought against the official in an official capacity only.  Id.  Here, Andrew Alexander does not

designate in his Amended Complaint whether he is suing Officers Baumgart and Baumhofer in

their official or individual capacities.  At oral argument, his counsel averred that while the

Amended Complaint did not specify that claims were brought against Officer Baumhofer in her

individual capacity, the summons directed to her did.  The summons is not a matter of record,

and the Court does not accept as evidence unsworn factual averments made during oral

argument.  Furthermore, even if the summons were a matter of record and did expressly state

that Officer Baumhofer was being sued in her individual capacity, Eighth Circuit precedent is

---

[9] The legal and factual bases underlying Andrew Alexander's conspiracy claims is unclear.  In the Amended Complaint, he alleges only that he is pursuing "common law theories of conspiracy," Am. Compl. ¶ 64, and seeks attorney's fees under 42 U.S.C. § 1988, Am. Compl. ¶ 65.  In his briefs however, Andrew Alexander makes clear he is seeking to recover for a conspiracy premised on a violation of § 1983 against the St. Paul Defendants, see Pl.'s Response to City of St. Paul's Mot. to Dismiss [Docket No. 34] 14–15, and for a conspiracy premised on "torts" against the Trustees, see Pl.'s Response to John A. Hedback & Mary Jo Ann Jensen-Carter's Mot. to Dismiss [Docket No. 33] 10.

clear that the presumption of an official capacity suit is only defeated when the pleadings expressly state the suit against in officer in her official capacity.  See id.  A summons does not form part of the pleadings.  See Fed. R. Civ. P. 7.  Therefore, Andrew Alexander's claims will be construed as bringing a claim against Officers Baumgart and Baumhofer in their official capacities only.

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  A municipality, such as St. Paul, may be liable under § 1983 only where a policy or custom of that entity caused the alleged constitutional violation.  Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690–92 (1978).  Stated another way, a local government is liable under § 1983 only where its policy or custom is the "moving force" behind a constitutional violation.  See id. at 694–95.

Under certain circumstances, a municipality's failure to adequately train its police officers can be such a policy or custom.  City of Canton v. Harris, 489 U.S. 378, 380 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388.  In the Eighth Circuit, deliberate indifference must be established by showing that a municipality had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.  See Thelma D. By and Through Delores A. v. Bd. of Educ. of City of St. Louis, 934 F.2d 929, 934 (8th Cir. 1991).  A plaintiff can show such notice either by showing (1) failing to train is so likely to result in a constitutional violation that the need for training is patently obvious or (2) a pattern of constitutional violations put the

municipality on notice that its employees' responses to recurring situations are insufficient.  Id. at 934–35.

### 2. Dispossession of Real Property Theory

Andrew Alexander seeks to hold the St. Paul Defendants liable for their role in dispossessing him of the Property.  He avers the Property was taken without due process of law, and seeks to hold the St. Paul Defendants liable based on a theory of failure to train.  Specifically, Andrew Alexander argues that St. Paul has failed to train St. Paul police officers in how to assist other agencies with evictions.  He avers that because he was not named in the August 31, 2011 Order, the St. Paul Defendants, if properly trained, would have investigated his claim of ownership.  He further argues such an investigation would then have placed the St. Paul Defendants on notice that he had a possessory interest in the property that had not been extinguished under Minnesota law.

Andrew Alexander's argument fails because it is premised on an incomplete reading of the relevant law.  Andrew Alexander argues the absence of his name on the August 31, 2011 Bankruptcy Order rendered it facially invalid and created additional duties of inquiry because under Minnesota law an order of eviction requires a party's name.  However, the name requirement is only a part of the law in Minnesota.  As Andrew Alexander recognizes, a complaint in an eviction action must "stat[e] the full name and date of birth of the person against whom the complaint is made, unless it is not known . . . ."  Minn. Stat. § 504B.321, subd. 1.  The very next subdivision of the Minnesota statutes provides, "[t]he lack of the full name and date of birth of the person against whom the complaint is made does not deprive the court of jurisdiction *or make the complaint invalid*."  Minn. Stat. § 504B.321, subd. 2 (emphasis added).

Furthermore, under Minnesota law, a law enforcement officer may execute a writ of recovery of premises by demanding that the named defendant or *any adult member of the defendant's family occupying the premises* relinquish possession and leave. Minn. Stat. § 504B.365, subd. 1(a). Minnesota law also authorizes law enforcement to use force to remove a named defendant's family members. Minn. Stat. § 504B.365, subd. 1(b). Finally, "[v]iolations of state law do not state a claim under 42 U.S.C. § 1983." <u>Doe v. Gooden</u>, 214 F.3d 952, 955 (8th Cir. 2000). State law is relevant only to determine whether a property interest that could be protected by the U.S. Constitution has been created. <u>Dover Elevator Co. v. Ark. State Univ.</u>, 64 F.3d 442, 446 (8th Cir. 1995).

Therefore, the absence of Andrew Alexander's name on the August 31, 2011 Bankruptcy Order, whether or not it violated Minnesota state law, did not detract from its facial validity and could not have alerted St. Paul police that Andrew Alexander may have had an unextinguished possessory interest in the Property. Enforcement of a facially valid order is not a situation where the likelihood of a constitutional violation is so high that the need for training to require further inquiry is patently obvious. Indeed, Minnesota's statutory scheme of allowing eviction of non-named persons makes intuitive sense given the reasonable expectation that persons without any possessory interest in property may be present as guests or unauthorized occupants. Therefore, the St. Paul Defendants could only have harbored a "deliberate indifference" if they knew the bankruptcy court had some pattern of issuing facially valid but unconstitutional orders. No such allegations have been made, and therefore the § 1983 claims against the St. Paul Defendants premised on dispossession of the Property are dismissed with prejudice.

19

### 3.  Deprivation of Personal Property Theory

Andrew Alexander alleges the St. Paul Defendants deprived him of his personal property without due process of law.  Am. Compl. ¶ 37.  This claim fails because he has not alleged sufficient factual content that this theory has facial plausibility.  He solely alleges that "At some point in October or November 2011, Defendants started throwing the personal property in the House into a dumpster or otherwise disposing of that personal property."  Am. Compl. ¶ 34.  However, his broad reference to "Defendants" cannot plausibly relate to the St. Paul Defendants.  The other allegations of the Amended Complaint establish that the St. Paul Defendants' sole role in the events here was assisting the Trustees and Federal Defendants in gaining possession of the Property.  Without any role in disposing of Andrew Alexander's personal property, much less a policy or custom, Andrew Alexander's § 1983 claim as it relates to this theory is dismissed with prejudice.

### 4.  Home Search Theory

Andrew Alexander also brings § 1983 claims against the St. Paul Defendants based on the search of the Property after his dispossession.  See Am. Compl. ¶ 26.  "An individual may challenge a search under the Fourth Amendment if it violates the individual's 'reasonable expectation of privacy' . . . ."  United States v. Cowan, 674 F.3d 947, 955 (8th Cir. 2010) (citations omitted).  As with the dispossession of the Property, this claim also fails due to the facial validity of the August 31, 2011 Bankruptcy Order.  The bankruptcy court ordered the U.S. Marshals to  "physically remove, by force if necessary, Larry Kenneth Alexander, G. Yvonne Stephens *and any others occupying* [the Property]."  Inherent in this order was the necessity of searching the Property for "any others occupying" it.  Given the facial validity of the order,

20

which expressly declared Trustees Jensen-Carter and Hedback to be owners of the Property, and the Trustees' participation, it would not have been patently obvious to the St. Paul Defendants that further training would be required to identify other people with reasonable expectations of privacy in the Property (assuming Andrew Alexander in fact had such an expectation).  Further, Andrew Alexander makes no allegations of a pattern of unconstitutional conduct that would have notified the St. Paul Defendants of the need for further training.  Therefore, Andrew Alexander's § 1983 claims, as they relate to any search of the Property, are dismissed with prejudice.

### 5.  Search of Person Theory

Andrew Alexander also premises his § 1983 claims against the St. Paul Defendants on the frisk of his person.  Without running afoul of the Fourth Amendment, an "officer may frisk a suspect for the protection of himself or others nearby to discover weapons if 'he has a reasonable, articulable suspicion that the [suspect] may be armed and presently dangerous.'" United States v. Banks, 553 F.3d 1101, 1105 (8th Cir. 2009) (alteration in original).

Here, Andrew Alexander does not state a claim on which relief can be granted because he brings only an official capacity claim against Officer Baumhofer but does not allege any policy or custom of St. Paul failing to train officers regarding frisks.  To be sure, some courts have noted that a person having his hands in his pockets, absent some display of nervousness or refusal to remove them, does not raise a reasonable articulable suspicion that the person is armed and dangerous.  Compare United States v. Davis, 94 F.3d 1465, 1469 (10th Cir. 1996) ("The fact that Davis had his hands in his coat pockets on a December night in Tulsa also does not justify an investigative detention.") with United States v. Ellis, 501 F.3d 958, 961 (8th Cir. 2007) (allowing frisk where suspect was in house known for drug activity, acted nervous, placed hands

in pockets, and attempted to leave).  However, Andrew Alexander's pleadings do not allege any individual capacity claims against Officer Baumhofer.  The allegations say nothing about what type of training St. Paul police officers receive regarding frisks and, contrary to Andrew Alexander's assertions, a single occurrence of unconstitutional conduct does not raise a plausible inference of a policy or custom of such conduct.  Therefore, without any allegations of a policy or custom causing a constitutional violation, Andrew Alexander's § 1983 claims are dismissed with prejudice to the extent they are premised on the search of his person.

### 6. Conspiracy Theory

Andrew Alexander also alleges a conspiracy between the St. Paul Defendants, Trustees, and Federal Defendants to violate his constitutional rights.  To prevail on such a claim, a plaintiff must show "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff."  Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999).  Here, Andrew Alexander has not plausibly alleged that the St. Paul Defendants conspired to deprive him of a constitutional right.  It is not sufficient that the St. Paul Defendants conspired with the others to carry out the August 31, 2011 Bankruptcy Order; they must conspire *for the purpose* of depriving one of a constitutional right.  See Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (emphasis added).  Andrew Alexander has not pled sufficient factual content to raise a reasonable inference that the St. Paul Defendants conspired for the purpose of depriving him of a constitutional right.  The only allegations are that the St. Paul Defendants were recruited to help carry out a facially valid order, and did so.  Therefore, any civil rights conspiracy claim against them is dismissed with prejudice.

**D.**     **Tort Claims Against Federal Defendants**

In his Amended Complaint, Andrew Alexander purports to bring several state law tort claims against the Federal Defendants.  In response, the Federal Defendants moved to dismiss those claims, averring they were barred by the administrative exhaustion requirement of the Federal Tort Claims Act ("FTCA").  As discussed above, Andrew Alexander made an apparent about-face in his brief in opposition to the Federal Defedants' motion, claiming that he was now seeking recovery for constitutional torts under Bivens, and therefore the FTCA did not apply.  Having rejected Andrew Alexander's last ditch effort to convert his claim to unpled theories, the Court will consider the merits of his state law tort claims.

"Sovereign immunity bars claims against federal officials in their official capacities unless a waiver of sovereign immunity is unequivocally expressed."  Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir. 1986) (internal quotations omitted, citations omitted).  "By waiving sovereign immunity for certain injuries and losses, the FTCA provides a remedy for torts committed by federal officers."  Hartje v. F.T.C., 106 F.3d 1406, 1480 (8th Cir. 1997) (citing 28 U.S.C. § 1346(b)).  The FTCA's waiver of sovereign immunity, however, is limited.  In order to bring a tort claim against federal officials, a plaintiff must first present a claim to the appropriate federal agency and have his claim finally denied by the agency in writing.  28 U.S.C. § 2675(a).  Andrew Alexander makes no allegations of having made a claim to, or having that claim denied by, the U.S. Marshals Service prior to this lawsuit.  Therefore, his claims are barred under the FTCA, and are dismissed.  The dismissal is without prejudice.  See Faison v. LeBlanc, 250 Fed. App'x 195, 196 (8th Cir. 2007) (affirming dismissal of unexhausted FTCA claim without prejudice).

**E.      Equitable Claim Against Federal Defendants**

In addition to bringing tort claims against the Federal Defendants, Andrew Alexander seeks equitable relief.  Assuming without deciding that sovereign immunity does not bar equitable claims, those claims are nonetheless dismissed.

First, Andrew Alexander seeks an injunction against the Federal Defendants prohibiting them from interfering with his possession of the Property or taking any action to hinder his possession of his personal property.  Andrew Alexander's personal property has been disposed of, Am. Compl. ¶ 34, and therefore that issue is moot.

With respect to the Property, in granting injunctive relief, courts weigh the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) whether the movant proves actual success on the merits; and (4) the public interest."  Forest Park II v. Hadley, 336 F.3d 724, 731 (8th Cir. 2003).  The Federal Defendants aver there is no ongoing conduct to enjoin.  However, the August 31, 2011 Bankruptcy Order, presumably still in effect, directs the Federal Defendants to exclude persons other than the Trustees from occupying the Property.  Nonetheless, the Court will not grant injunctive relief against the Federal Defendants because the balance of harms and public interest do not favor it.  It has been judicially determined that Andrew Alexander's interest in the Property, if any, is as a tenant in common. Jan. 5, 2006 Order [Bankruptcy Case 04-3468 Docket No. 26] 8–9; see also Minn. Stat. § 500.19, subd. 5 (bankruptcy severs joint tenancy).  Under Minnesota law, partition is a matter of

24

right for co-tenants, partition will be accomplished through sale if partition in kind cannot be had without great prejudice, and partition will extinguish Andrew Alexander's interest. See Minn. Stat. § 558.01. Andrew Alexander does not claim, and no suggestion has been made, that he intends to purchase the Property from the Trustees. Therefore, no interest is served by, and the balance of harms does not weigh in favor of, allowing Andrew Alexander to resume occupancy of the Property, only for him to vacate upon sale, particularly where the dilatory and contradictory litigation by Andrew Alexander's parents have deprived creditors of payment and deprived all involved in the litigation of finality with regard to the Property.[10] Andrew Alexander's claim for injunctive relief is dismissed with prejudice.

Andrew Alexander also seeks an accounting against the Federal Defendants for proceeds of his property sold or converted to raise proceeds to pay creditors of his parents. An accounting is an equitable remedy. See Keough v. St. Paul Milk Co., 285 N.W. 809, 815 (Minn. 1939). Andrew Alexander makes no allegations that the Federal Defendants have sold his property to satisfy Larry Alexander and Stephens' creditors. Rather, it is the Trustees that are selling or have sold property. Therefore, Andrew Alexander's claim for an accounting is dismissed as to the Federal Defendants.

**F.      Tort and Equitable Claims Against the Trustees**

Eleven of Andrew Alexander's twelve asserted causes of action are brought against the Trustees. Having already dismissed with prejudice the § 1983 claims against the Trustees, the remaining ten causes of action must now be considered. Hedback and Jensen-Carter aver claims

---

[10] Indeed, the long history of this case brings to mind the fictional matter of Jarndyce v. Jarndyce in Charles Dickens' novel Bleak House.

against them are barred by the <u>Barton</u> doctrine.  The <u>Barton</u> doctrine arose from <u>Barton v. Barbour</u>, which held that a cause of action could not be brought against a court-appointed receiver without leave of the appointing court.  104 U.S. 126, 128–31 (1881).  The <u>Barton</u> doctrine has subsequently been applied to bankruptcy trustees to require leave of the bankruptcy court before bringing an action against a trustee for acts done in discharging official duties.  <u>See, e.g.</u>, <u>Matter of Campbell</u>, 13 B.R. 974, 976 (Bankr. Idaho. 1981) ("The trustee in bankruptcy is an officer of the court appointing him, and courts other than the appointing court have no jurisdiction to entertain suits against the trustee, without leave from that appointing court, for acts done in his official capacity . . . .").

Andrew Alexander argues that the <u>Barton</u> doctrine no longer applies to claims against a bankruptcy trustee because of a change in the manner in which trustees are appointed.  Prior to 1978, bankruptcy trustees were appointed by the judiciary.  Collier on Bankruptcy ¶ 6.01 (Alan N. Resnick & Henry J. Sommer, eds.,16th ed. 2010).  Subsequent to the Bankruptcy Reform Act of 1978, the United States trustee program was established and now appoints bankruptcy trustees.  <u>Id.</u>  Andrew Alexander argues that this change in appointment structure means the <u>Barton</u> doctrine is no longer applicable to suits against bankruptcy trustees.  However, post-1978, lower courts in this Circuit continue to apply the <u>Barton</u> doctrine to suits against bankruptcy trustees.  <u>See, e.g.</u>, <u>Lingenfelter v. Stoebner</u>, No. 03-CV-5544, 2005 WL 1225950, at *3-4 (D. Minn. May 23, 2005) (declining to exercise jurisdiction over claims against trustee without leave of Minnesota bankruptcy court); <u>In re Ross,</u> 231 B.R. 74, 78–79 (Bankr. W.D. Mo. 1999) (applying <u>Barton</u> doctrine, rejecting notion that <u>Barton</u> doctrine no longer applies because trustee is appointed by U.S. Trustee rather than court, and noting "the common law grants the

trustee immunity from suit in a non-bankruptcy forum so long as the trustee is engaged in the performance of his official duties"). This Court will not part from existing caselaw and practice, and will apply the <u>Barton</u> doctrine to the claims against the Trustees.

The <u>Barton</u> doctrine is not without exceptions.  Notably, the doctrine does not apply to acts outside of the scope of official duties.  <u>See</u> <u>Lingenfelter</u>, 2005 WL 1225950, at \*3.  Here, the Trustees' acts in taking possession of the Property were official duties, undertaken for the administration of either Larry Alexander or Stephens' bankruptcy estates, and ordered by the bankruptcy court.  Therefore, the <u>Barton</u> doctrine applies to those acts, and to the extent any claims are premised on dispossessing Andrew Alexander of the Property, those claims are dismissed.  The dismissal is without prejudice so that the claims may be reasserted if leave from the bankruptcy court is obtained.

However, Andrew Alexander's personal property is another matter.  With respect to real property at issue here, the bankruptcy court ordered the U.S. Marshals to "physically remove, by force if necessary, Larry Kenneth Alexander, G. Yvonne Stephens and *any others occupying* [the Property] . . . ."  August 31, 2011 Bankruptcy Order ¶ 4 (emphasis added).  With respect to chattel property, however, the bankruptcy court ordered "[a]ny property of Larry Kenneth Alexander or G. Yvonne Stephens remaining at [the Property] on or after 7:15 a.m. September 15, 2011, shall be deemed to be abandoned property and may be removed or disposed of by [the Trustees]."  <u>Id.</u> ¶ 2.  Notably absent is the phrase "any others."  The order on its face, therefore, did not authorize the Trustees to take any action regarding Andrew Alexander's personal property and the <u>Barton</u> doctrine does not apply.

The distinction between personal property and real property is particularly important because under the common law of Minnesota, tenants retain rights to their personal property notwithstanding eviction from real property.  Shepard v. Alden, 201 N.W. 537, 539 (Minn. 1924) ("A landlord should not be allowed to assert title to his tenant's chattels merely because the tenant did not carry them with him when he was evicted.").  This common law rule has been codified in Minnesota's landlord-tenant statutes prohibiting a landlord from disposing of personal property of an evicted tenant for a period of time.  See Minn. Stat. §§ 504B.271, 504B.365.  However, the extent of any property interest Andrew Alexander held in his personal property, and whether he is entitled to any remedy, are questions of state law.

In summary, Andrew Alexander's claims premised on the dispossession of the Property—namely, trespass, battery, accounting, injunction, abuse of process, and conspiracy[11]—are dismissed without prejudice under the Barton doctrine.

G.      **Remaining Claims**

The remaining claims are state law torts against the St. Paul Defendants or against the Trustees.  Having resolved all other claims, and in the interest of this Court's judicial economy and in the interest of comity to Minnesota's state courts, the Court will decline to exercise its supplemental jurisdiction over Andrew Alexander's state law claims against the St. Paul

---

[11] As noted above, Andrew Alexander has noted merely that his conspiracy claim against the Trustees is premised on "torts."  Pl.'s Response to John A. Hedback & Mary Jo Ann Jensen-Carter's Mot. to Dismiss 10.  Given the allegations of the Amended Complaint, it appears that the "torts" subject to any conspiracy would be those related to taking possession of the Property, and therefore are dismissed under the Barton doctrine.  To the extent the conspiracy claim is premised on torts related to Andrew Alexander's personal property, the claim is dismissed under 28 U.S.C. § 1367(c).

Defendants and his civil theft, conversion, and replevin claims against the Trustees.  See 28

U.S.C. § 1367(c).  Those claims are dismissed without prejudice.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Defendants Jensen-Carter and Hedback's Motion to Dismiss [Docket No. 27] is

**GRANTED**;

2.  Defendant City of Saint Paul's Amended Motion to Dismiss and for Summary

Judgment [Docket No. 36] is **GRANTED**;

3.  Defendants Sharon Lubinski, John Doe, and Jane Doe's Motion to Dismiss or, in the

Alternative, for Summary Judgment [Docket No. 38] is **GRANTED**;

4.  All claims under 42 U.S.C. § 1983 against Defendants Jensen-Carter, Hedback,

Fokkena, the St. Paul Defendants, and the Federal Defendants, and the conspiracy claim

against the St. Paul Defendants, are **DISMISSED with prejudice**;

5.  Plaintiff Andrew Alexander's claims against the Federal Defendants for trespass,

theft, conversion, replevin, battery, abuse of process, conspiracy, and negligent

supervision, are **DISMISSED without prejudice** pursuant to the Federal Tort Claims

Act.

6.  Plaintiff Andrew Alexander's claims against the Federal Defendants for an injunction

and an accounting are **DISMISSED with prejudice**,

29

7.  Plaintiff Andrew Alexander's claims against the Trustees and Fokkena for trespass, battery, accounting, injunction, abuse of process, conspiracy, and negligent supervision, are **DISMISSED without prejudice** under the Barton doctrine;

8.  Plaintiff Andrew Alexander's claims against the Trustees and Fokkena for theft, conversion, and replevin are **DISMISSED without prejudice** under 28 U.S.C. § 1367(c); and

9.  Plaintiff Andrew Alexander's claims against the St. Paul Defendants for trespass, theft, conversion, replevin, accounting, battery, injunction, abuse of process, and negligent supervision are **DISMISSED without prejudice** under 28 U.S.C. § 1367(c).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 5, 2012.